UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

DAVID ALLEN CAUDILL,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

Case No. 1:25-CV-440 JD

## OPINION AND ORDER

Plaintiff David Caudill applied for disability insurance benefits under Title II and supplement security income under Title XVI of the Social Security Act, alleging disability beginning in August 2022. His claims were rejected, leading to a review by an Administrative Law Judge ("ALJ") who concluded that Plaintiff was not disabled. The Appeals Council denied his request for review, and Plaintiff now seeks judicial review. For the reasons below, the Court will affirm the Agency's decision.

### A.  Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B.  Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## C.  The ALJ's Decision

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, she found that Plaintiff suffered from the following severe impairments: "cervical stenosis of the spine; cervical spine spondylosis; diabetes mellitus (DM); history of right knee surgery; attention deficit hyperactivity disorder (ADHD), combined type and schizoaffective disorder, bipolar type." (ALJ's Decision, R. at 19.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id*., R. at 20–21.)

As relevant to Plaintiff's appeal, he testified that he uses a cane three times a week to help with his knee problems. He said he generally has two bad days a week and, during those days, his wrist hurts, he can't move his hand and has trouble walking, and he can't sit for long due to arthritis in his hips. If he sits for a prolonged period, it's hard for him to get up and walking is difficult. He can sit for only 15–25 minutes before he has to get up. (R. at 55–56.) Plaintiff also complained of neck pain which prohibits him from moving his head freely. (R. at 56–57.) He said no doctor will perform surgery because he is diabetic. (R. at 57.)

In determining Plaintiff's residual functional capacity ("RFC"),[1] the ALJ recounted Plaintiff's testimony and function report (ALJ's Decision, R. at 23) and found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms" (*Id*., R. at 24). At the same time, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

consistent with the frequency and severity reflected within the medical evidence and other evidence in the record . . . ." (*Id.*)

The ALJ noted that in February 2024, physical consultative examiner Tiffany Smith, NP, opined that Plaintiff could sit for 20 minutes, stand for 30 minutes, and walk two blocks before needing to stop. She further opined that Plaintiff could carry 20 pounds short distances and lift 10 pounds over his head one time. (ALJ's Decision, R. at 28; R. at 694–95.) The ALJ found this opinion unpersuasive pointing out that these limitations weren't supported by NP Smith's own examination findings "which were normal with the exception of reduced range of motion of [Plaintiff's] cervical spine, lumbar spine and right wrist and positive supine straight leg raising on the right." (ALJ's Decision, R. at 28.) The ALJ also found NP Smith's opinion inconsistent with the unremarkable physical findings in the medical record.

The ALJ also considered the findings of state agency consultant Joshua Eskonen, DO. Dr. Eskonen found that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently and that, during an 8-hour workday, he could stand or walk for about 6 hours and sit for about the same length of time. He could also push or pull 50 pounds. The ALJ found these findings "mostly persuasive" because Dr. Eskonen offered support from the objective evidence and clinical signs in the record. (ALJ's Decision, R. at 30.) At the same time, the ALJ observed that Dr. Eskonen's "findings are not entirely consistent with the record as a whole." (*Id.*) The ALJ pointed out that Plaintiff was diagnosed with stenosis of the cervical spine, cervical spondylosis, diabetes mellitus, and had a history of right knee surgery. He also had history of "slight tenderness of his left upper trapezius muscles, moderate tightness of his left levator scapulae, reduced range of motion of his cervical spine, lumbar spine and right wrist, reduced strength of his upper extremities, occasional loss of sensation in both forearms and hands with

certain head movements, increased cervical lordosis, very protracted shoulders and scapulae, very poor posture, pain on the left with distraction testing, positive left straight leg raising, and complaints of nausea, vomiting, minimal abdominal discomfort, hyperventilation, decreased activity, chills, polyuria, polyphagia, polydipsia, general weakness, arthralgias, myalgias, constant neck pain radiating to his shoulder and hand, back pain and issues with range of motion." (ALJ's Decision, R. at 30.)

The ALJ adopted Dr. Eskonen's findings with the exception that Dr. Eskonen found that Plaintiff could "frequently handle on the right," whereas the ALJ believed that Plaintiff had the same limitation bilaterally. According to the ALJ, "a more restrictive residual functional capacity is not warranted, as exam findings were at times normal. For instance, his gait was normal, and he had grossly full motor strength in the extremities, often without swelling or tenderness. He often demonstrated normal range of motion in addition to intact sensation and normal and symmetric deep tendon reflexes." (*Id.* (citations to the record omitted).) The ALJ also determined that Plaintiff had no necessity for a cane as no medical source determined otherwise. (*Id.*)

In considering the records from Plaintiff's medical appointments, the ALJ noted Plaintiff's pain and range of motion complaints and the corresponding medical evaluations. As relevant here, the ALJ observed that, on December 29, 2022, Plaintiff reported constant neck pain, rated as 9 out of 10 as well as issues with range of motion. Yet the examination showed normal range of motion of the neck and of all extremities. Plaintiff's distal pulses were intact and he had no joint swelling. His motor function was "grossly normal." (*Id.*, R. at 24.) He was prescribed a relaxant and a steroid and referred to physical therapy.

A physical therapy evaluation in February 2023 showed that Plaintiff can walk without a cane. He moved freely in all his extremities, but he had tenderness to palpitation in his left upper

trapezius muscles and moderate tightness in his left levator scapulae. He had some pain and occasional loss of sensation in both forearms. His posture was poor. But his strength was mostly normal although he had some issues with side-bend head testing. He was discharged from therapy after four weeks due to lack of progress. (*Id.*, R. at 24–25.)

In May 2023, Plaintiff's examination during a visit related to his diabetes showed that he had a "normal range of motion of his neck with no tenderness and normal range of motion of all extremities with intact distal pulses and no joint swelling." (*Id.*, R. at 25.) In December 2023, Plaintiff received emergency treatment for elevated glucose and was admitted to the hospital. Physical examination "showed normal range of motion of [Plaintiff's] neck and back with no tenderness, and his peripheral pulses were normal with no pedal edema, clubbing or cyanosis. He had no joint tenderness, deformity or swelling, and his gate was stable. He ambulated unassisted." (*Id.*, R. at 25.) Two weeks later, he reported that he had been feeling better since the hospital discharge. His range of motion was normal in his neck and all extremities. His motor function was "grossly normal." (*Id.*)

> The ALJ concluded that Plaintiff has the RFC to perform
>
> medium work[2] . . . except he can occasionally climb ladders, ropes or scaffolds. He can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He can frequently reach in all directions and handle bilaterally. He is limited to frequent interaction with supervisors, coworkers and the public. He can carry out simple instructions.

(*Id.*, R. at 27.)

The ALJ posed a hypothetical question to the vocational expert ("VE") based on her RFC findings. The VE testified that Plaintiff could perform past relevant work as a construction

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday . . . ." SSR 83-10 (S.S.A. 1983).

worker as he performed it but not as it is described in the Dictionary of Occupational Tiles. In addition, the VE testified that there are other jobs in the national economy in significant numbers that a hypothetical person with Plaintiff's RFC could perform: hospital food service worker; hospital cleaner; motor vehicle assembler. (R. at 61–62.) Relying on the VE's testimony, the ALJ concluded that Plaintiff indeed can perform his past relevant work and that, alternatively, considering his "age, education, work experience, and residual functional capacity, [he] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (ALJ's Decision, R. at 26.) As a result, the ALJ found Plaintiff to be not disabled.

## D.  Discussion

In his appeal, Plaintiff argues that the ALJ committed a reversible error by failing to account for the "total limiting effects" of his impairments. In particular, he contends that he is limited to walking only short distances, which is supported by his testimony and statements in the function report. Further, NP Smith similarly opined that he could sit for 20 minutes, stand for 30 minutes, and walk 2 blocks before needing to stop due to knee and foot pain. According to Plaintiff, his testimony is also consistent with the objective evidence: he has a history of two right knee surgeries; his cervical MRI showed mild multilevel degenerative disc and facet disease; he had decreased lateral flexion, extension, and rotation in his right cervical spine; and his right straight leg raise test was positive when supine. Plaintiff argues that the ALJ failed to consider the effect of this evidence when assessing his RFC.

Defendant responds that Plaintiff has failed to identify any impairment that the ALJ failed to consider. According to Defendant, Plaintiff merely asks the Court to reweigh the

evidence and adopt his assertions. Defendant also counters that, although Plaintiff is relying on NP Smith's opinion that his exertional abilities are limited, he hasn't shown that the ALJ's discounting of her opinion was improper.

Plaintiff has not filed a reply.

The Court finds no error in the ALJ's RFC assessment.

### (1) *The RFC Assessment*

"The RFC finding is central to the outcome of a Social Security case." *Holiday v. O'Malley*, No. 2:23-CV-302, 2024 WL 2860088, at *3 (N.D. Ind. June 5, 2024). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.").

In addition, "an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v.*

*Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted).

Despite his assertions to the contrary, Plaintiff has not shown that, in fashioning the RFC, the ALJ failed to consider his allegations that he can walk only short distances and thus cannot meet the requirements of medium work. To the contrary, the ALJ acknowledged that, in Plaintiff's function report, he stated that his impairments affected his ability to walk, among other things, and that he testified at the hearing to using a cane three times a week to help with his knees. (ALJ's Decision, R. at 23.) Further, the ALJ considered NP Smith's opinion that Plaintiff can sit for 20 minutes, stand for 30 minutes, walk two blocks before needing to stop, and that he can carry 20 pounds for short distances. Although this opinion supports Plaintiff's allegations, the ALJ found it to be unpersuasive because it is unsupported by NP Smith's own examination findings and is inconsistent with the medical record as a whole. Plaintiff has not shown that this finding was erroneous.

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following

factors: supportability; consistency; medical source's relationship with the claimant; specialization; and any other factors that tend to support or contradict the medical opinion, including evidence that the medical source is familiar with other evidence in the claim or understands the disability program's policies. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, even though the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). An ALJ commits legal error if she fails to adequately discuss the supportability and consistency factors. *See Liapis v. Bisignano*, ___ F.4th ___, No. 24-3170, 2026 WL 1948808, at *3 (7th Cir. July 6, 2026) (finding that an ALJ who considered all § 404.1520c factors except for supportability and consistency committed "clear legal error"). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "In making these determinations, an ALJ is subject to only the most minimal of articulation requirements. That is, the ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning. While minimal, this standard requires the ALJ to confront the evidence that does not support his conclusion and explain why it was rejected." *Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir. 2025) (citations, quotation marks, and

brackets omitted). "At the end of the day, once the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quotation marks and citation omitted).

Plaintiff focuses on the consistency factor, but it's important to note that the ALJ found NP Smith's opinion unsupported by her own medical examination of Plaintiff. According to the ALJ, NP Smith's "exam findings were normal with the exception of reduced range of motion in his cervical spine, lumbar spine and right wrist and positive supine straight leg raising on the right." (ALJ's Decision, R. at 28.) The ALJ emphasized that NP Smith's examination showed that Plaintiff's "gait was stable, and his posture was normal. His peripheral pulses were positive, and his extremities were warm with no cyanosis, edema or shiny atrophic skin and normal hair distribution. . . . His cranial nerves were grossly intact, he had no gross focal motor deficits, and his grip strength was 5/5 bilaterally . . . . His muscle strength was 5/5 in all extremities, and heel/toe and tandem walking was normal." (*Id.*, R. at 25–26; *see also* R. at 694–95.) The ALJ also observed that according to NP Smith Plaintiff's gait was "well sustained without an assistive device." (*Id.*) Plaintiff does not challenge the ALJ's supportability finding, thus waiving any objection. *See Schomas v. Colvin*, 732 F.3d 702, 707–708 (7th Cir. 2013) (arguments not raised or undeveloped are waived).

Regarding consistency, Plaintiff contends that the ALJ relied on three irrelevant medical examinations, conducted in the context of his visits for diabetes care, while refusing to acknowledge that the physical therapy assessment is consistent with his claim that he has difficulty walking and is consistent with NP Smith's opinion. As to the first diabetes care visit on May 4, 2023, Plaintiff concedes that the examination was "unremarkable," but insists that it

should be disregarded because his primary concern was hyperglycemia and "Plaintiff did not report (or the medical source did not record) musculoskeletal symptoms." (Pl.'s Br., DE 14 at 10.) Likewise, Plaintiff maintains that, for the same reasons, the ALJ should not have considered his December 2023 emergency department visit for hyperglycemia, after which he was hospitalized, and should not have considered his subsequent follow-up visit. (*Id.*)

But Plaintiff fails to explain why his normal musculoskeletal findings—such as normal range of neck motion with no tenderness, no back tenderness, normal range of motion in the extremities, no joint swelling or tenderness, and grossly normal motor function (R. at 343, 451, 676)—are irrelevant just because they originated in the context of his visits to treat diabetes. After all, no matter why Plaintiff was seen, there is no suggestion that his physical examinations were invalid or flawed. By seeking to blot out these medical examinations, Plaintiff is inviting the Court to substitute its judgment for that of the ALJ's, which it may not do. The Court does not review "medical opinions independently but rather review[s] the ALJ's weighing of those opinions for substantial evidence, and [it] only overturns that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). The Court finds no error in the ALJ's consideration of Plaintiff's physical examinations during his visits for diabetes-related complications and in finding that they contradict NP Smith's opinion as well as Plaintiff's testimony.

What is more, Plaintiff ignores the ALJ's review of the treatment note from Plaintiff's December 29, 2022, visit during which he was seen for complaints of constant neck pain that he rated as 9 out of 10 in intensity. Despite this reported pain, Plaintiff demonstrated normal neck range of motion with no tenderness, no back tenderness, normal range of extremity motion with intact distal pulses and no joint swelling, and grossly normal motor function (ALJ's Decision, R.

at 24; R. at 377). The ALJ also considered the state agency consultant's opinion, who reviewed Plaintiff's records and concluded that he retained the capacity to perform a range of medium work consistent with the ALJ's conclusion. (ALJ's Decision, R. at 22–23; R. at 78–79.) Finally, the ALJ considered Plaintiff's assertion that he needs to use a cane, noting that no "acceptable medical source has determined that use of a cane was medically necessary for the claimant." (ALJ's Decision, R. at 30.)

Although Plaintiff is not challenging these findings, he devotes a portion of his brief to arguing that the ALJ neglected to compare the broader medical record with his testimony, electing to merely summarize the medical record without comparing it with his statements. The Court disagrees. As noted earlier, the Court must read the ALJ's decision holistically, and while the ALJ could have presented her findings differently, it is sufficiently clear that she has taken into account Plaintiff's testimony, the statements in his function report, as well as NP Smith's opinion, and considered them in light of the medical record. In reviewing NP Smith's opinion, the ALJ has stated as much: "[w]hat is more, [the limitations assessed by NP Smith] are not consistent with other unremarkable physical findings of record as previously discussed." (ALJ's Decision, R. at 28.) The fact that the "unremarkable physical findings" are discussed in other parts of the decision does not invalidate the ALJ's analysis. *See, e.g.*, *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("We do not discount [the ALJ's discussion evidence] simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant.").

Lastly, Plaintiff points to the physical therapy records and argues that they are consistent with his subjective symptoms and NP Smith's opinion. In particular, he cites the physical therapist describing his "very protracted" shoulder and scapulae, very poor posture, and

14

decreased right cervical rotation and side bending. (Pl.'s Br., DE 14 at 10 (citing R. at 557–58).) He also refers to the physical therapist's assessment that "[p]atient presents with Moderate impairment." Finally, Plaintiff observes that the physical therapist assessed decreased right cervical extension (45 degrees on a scale of 0–60 degrees) and lateral flexion (30 degrees on a scale of 0–45 degrees) and rotation (70 degrees on a scale of 0–80 degrees). (*Id.* (citing R. at 558).) But Plaintiff ignores the fact that the ALJ accepted essentially the same findings in NP Smith's examination and recounted them when considering the physical therapy evaluation. (*See* ALJ's Decision, R. at 24, 28.) What's more, in evaluating the state agency doctor's findings, the ALJ specifically considered, among other things, "reduced range of motion of [Plaintiff's] cervical spine, lumbar spine and right wrist, reduced strength of his upper extremities, . . . very protracted shoulders and scapulae, very poor posture, . . . constant neck pain radiating to his shoulder and hand, back pain and issues with range of motion." (ALJ's Decision, R. at 30.) Plaintiff has not shown that the ALJ improperly weighed this evidence, let alone ignored it. Instead, as Defendant points out, Plaintiffs argument amounts to asking the Court to reweigh the evidence, which is not within its province. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it."). The Court will reverse only if the record compels a contrary result. *See id.* ("We will 'reverse only if the record compels a contrary result.'" (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)). The Courts finds no error in the ALJ's evaluation of NP Smith's opinion and, by extension, in her consideration of Plaintiff's function report and his testimony.

**E. Conclusion**

For these reasons, the Court AFFIRMS the Agency's decision. The Clerk is directed to prepare a judgment for the Court's approval.


SO ORDERED.

ENTERED: July 22, 2026

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court
